KOWALSKA v. WEBSTER-EISENLOHR, INC.

WORKMEN'S COMPENSATION—CIGAR FACTORY WORKER—IRRITANT GAS —DIZZINESS—LEG INJURY—FINDING OF DEPARTMENT—EVIDENCE. Finding of department of labor and industry after an adjourned hearing that plaintiff, an employee in a cigar factory, who, with about 30 other employees, had inhaled an irritant gas that resulted in her suffering from dizziness, headaches, nausea, vomiting and anemia, was still entitled to an award for total disability resulting from such inhalation, notwithstanding she had substantially recovered from fractured femur as she fell during a spell of dizziness, was supported by record where it appears she had offered to return to work but had not yet been notified to do so.

Appeal from Department of Labor and Industry. Submitted June 15, 1943. (Docket No. 2, Calendar No. 42,270.) Decided September 7, 1943.

Josephine Kowalska presented her claim against Webster-Eisenlohr, Inc., employer, and Zurich Insurance Company, insurer, for personal injuries sustained while in its employ. Award to plaintiff. Defendants appeal. Affirmed.

*Dann & Atlas,* for plaintiff.

*Kerr, Lacey & Scroggie,* for defendants.

NORTH, J. Except as to some details hereinafter noted, the controlling facts and law in the instant case are substantially the same as in *Rainko* v.

*Webster-Eisenlohr, Inc., ante,* 328.    Plaintiff employee was awarded compensation for total disability.    The defendant employer and its insurer have appealed.

Plaintiff's right to compensation is sustained by our holding in the above-noted companion case; but appellants in the instant case assert that the record is barren of any competent proof that at the time of the hearing before the department plaintiff was suffering any disability which resulted from a compensable injury.    Hence appellants contend that the department "should have terminated compensation, if granted at all, on the date of Dr. Ledwidge's examination—September 27, 1941."

As in the *Rainko Case,* plaintiff along with some 30 coemployees was subjected to a gas odor in the room where they were employed on Thursday, February 20, 1941.    Plaintiff did not collapse, as did many of her coworkers, but she felt sleepy, became dizzy and nauseated, and along with many other employees was taken to the Receiving Hospital where she remained about six hours, and was then taken to her home.    The material subsequent events as disclosed by the testimony are stated in the department's findings as follows:

"Plaintiff remained at home in bed for the remainder of the week and returned to work on Monday, February 24, 1941.    She still felt weak and dizzy, but worked the entire week.    She did not work the following Monday, but worked Tuesday, a half day on Wednesday, March 5th, and had to quit because she was sick.    According to plaintiff's testimony, on Sunday, March 9th, her foreman sent a woman to her home to tell her if she did not return to work she would lose her job.    On the following day, as she was about to leave the house on her way to work, she felt dizzy and fell, at the time not know-

ing what had happened. She was taken to Receiving Hospital where an examination disclosed a transverse fracture through the left femur. She was later removed to Saratoga Hospital where she was confined for a period of 100 days. She has not worked since March 5, 1941."

In connection with the foregoing phase of the record, appellants have submitted the following question:

"Has any disability which plaintiff may have suffered as a result of an accidental personal injury arising out of and in the course of her employment with the defendant, terminated?"

It is pointed out in appellants' brief that there is testimony from which the department might have concluded that plaintiff's disability which resulted from her *personal injury, i. e.,* her fall on March 10th and the fracture of her left femur, had entirely terminated prior to the hearing, with the exception that plaintiff was still somewhat lame, but that this did not interfere with the performance of her duties with the defendant employer. However, it would not follow from this circumstance that the department should have terminated, instead of having continued, plaintiff's compensation. The record contains testimony from which the department might well have found a causal relation between the *personal injury* which plaintiff suffered on March 10th and her then condition of dizziness, et cetera, caused by the accident of February 20, 1941. As to plaintiff's continuing disability at the time of the hearing before the department on September 30, 1941, plaintiff testified:

"*Q.* Have you gone back to work?

"*A.* No. I am not fit to go back to work.

"*Q.* Why not? Why can't you go back and work?

"*A.* I am nervous and my stomach hurts me, and I am dizzy. I can't—sometimes I can't walk. I want to sit.

"*Q.* You can walk around on your leg?

"*A.* Not so good—just a little. My leg is so stiff now I can't—I don't feel my leg at all.

"*Q.* Did you ever have these dizzy spells and pain in your stomach before this gas that you smelled on February 20th?

"*A.* No, I am work 10 years straight. I don't miss one day."

In response to inquiry from the deputy commissioner, plaintiff testified further that she was then feeling a "little better. Not so good. Some nervous. My stomach hurt me and my eyes and my tears in my eye every time;" that she was troubled with vomiting, nausea, that her leg was stiff; but that she was not under treatment of a doctor at the time; and from her cross-examination it appeared that she was walking without a crutch or a cane. Plaintiff, following the injury to her limb, was released from the hospital on June 18, 1941.

At an adjourned hearing on February 17, 1942, plaintiff testified:

"*Q.* How have you been feeling since you last worked?

"*A.* I haven't been feeling so good.

"*Q.* What seems to be the trouble?

"*A.* I have pains in my leg.  *  *  *  I have headaches. I can't sleep. I can't eat. I have tears in my eyes."

In corroboration of plaintiff's testimony Dr. Wittenberg testified that in his judgment there was a basis for the claim that Mrs. Kowalska's complaints arose out of the accident of February 20, 1941, that she had lost weight to the extent of 17 pounds, was

anemic, and that she was disabled because of inhaling irritant gas.

Dr. Krynicki also testified to a causal relation between the accident of February 20, 1941, and plaintiff's condition, stating that if plaintiff "were dizzy and had headaches" she would be disabled at least in part; that she was not disabled from her broken limb "with the exception she limps when she walks." He was interrogated by the commissioner as follows:

"*Q.* As a result of the inhalation of this irritant gas, if there was any such gas there, you would say she is disabled from that yet?

"*A.* Not completely. I believe the condition at the present time has considerably improved.  *  *  * I think that an attempt should be made (to have plaintiff go back to work), if she could be watched."

The record also discloses that prior to the conclusion of the hearing before the department plaintiff had offered to return to her work but had not been notified by her employer to do so. From the record as a whole, we cannot say that the finding of the department and the award made are not supported by any competent testimony. The award is affirmed, with costs to appellee.

BOYLES, C. J., and CHANDLER, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.